```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM J. HEINRICH,

                        Plaintiff,              10-CV-6239T

            v.                                  **DECISION
                                                and ORDER**

XEROX CORPORATION,

                        Defendant.
_____
```

### INTRODUCTION

Plaintiff William J. Heinrich ("Plaintiff" or "Heinrich") brings this action pursuant to the Age Discrimination in Employment Act ("ADEA")(codified at 29 U.S.C. § 621, *et seq.*) and the New York State Human Rights Law ("Human Rights Law")(codified at Executive Law § 290, *et seq.*), claiming that Defendant, Xerox Corporation ("Defendant" or "Xerox"), discriminated against him because of his age. (Dkt. No. 5 at ¶ 1). Specifically, Heinrich alleges that age discriminatory employment practices were the proximate and actual cause for his termination because Xerox failed to terminate younger, similarly situated employees. See id. at ¶¶ 16, 18, 23.

Defendant denies Plaintiff's allegations and moves for summary judgment dismissing Plaintiff's claims on grounds that he has failed to state a prima facie case of discrimination, and that even if he has stated a prima facie case, he has failed to rebut the defendant's legitimate, non-discriminatory reason for terminating

his employment.  For the reasons set forth below, Defendant's motion for summary judgment is granted, and Plaintiff's complaint is dismissed.

**BACKGROUND**

Plaintiff William Heinrich began working for the defendant, Xerox, in March, 1988.  (Dkt. No. 5 at 2).  At the time of his termination in September, 2008, he was 40 years-old and working as a Coater-Operator in the Color Flow II work group in the Supplies Division at Xerox's Webster Fuser Business Center ("WFBC") manufacturing plant located in Webster, New York.  (Dkt. No. 24 at 1-3).

During his time as a Xerox employee, Heinrich claims that he was subject to age discriminatory employment practices, and as a result of these practices, he was subject to undue discipline, scrutiny, and ultimately termination. (Dkt. No. 5 at 3-4). Specifically, he alleges that similarly situated employees "under the age of 40 and/or significantly younger than" him engaged in the same form of conduct that allegedly led to the termination of his employment.

Plaintiff maintains that his work record at Xerox was stellar and has no recollection of several events that resulted in the labor reports, suspensions, and warnings recorded in Xerox's records.  (Dkt. No. 27 Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ("Pl's Facts") at 5).

The following incidents from his disciplinary record, however, are undisputed.[1] (Dkt. No. 27 Pl's Facts at 7-9).

On March 5, 1992, Heinrich was issued a verbal warning for failing to follow his supervisor's oral and written instructions. On June 24, 1994, he was suspended from work for three days, according to the labor report, for acting abusive and threatening toward a supervisor.

On August 23, 1996, Plaintiff's supervisor issued a "D" Labor Report and Plaintiff was suspended from work for 29 days as the result of an incident in which he repeatedly threatened a co-worker in a provoking and intimidating manner, including threats to the co-worker's person and life. On April 9, 1999, Plaintiff was issued a labor report for leaving work without permission during work hours. An assessment of Plaintiff's work performance from 2008, the year of his termination, stated that he did not have a cooperative attitude and his performance did not meet expectations.

According to Defendant, the events that led to Heinrich's termination began on August 20, 2008, when one of his co-workers, Bob Earl ("Earl"), reported to his manager, Joy Longhenry ("Longhenry"), that Plaintiff had harassed and taunted him,

---

[1] Plaintiff's disciplinary record is well-documented and in accordance with Monroe County Rules of Conduct ("Rules of Conduct"), the rules that govern Plaintiff's conduct as a member of the Union of Needletrades, Industrial and Textile/Hotel Employees and Restaurant Employees Internation Union– C.I.O. Local 14A (the "Union"). (Dkt. No. 24 Defendant's Statement of Material Facts Not in Dispute in support of its Motion for Summary Judgment ("Def's Facts") at 1-2).

suggested they settle their differences in the parking lot, repeatedly told Earl that Plaintiff was a member of the Iron Horsemen motorcycle gang and a black belt in martial arts and could break Earl's arm in two moves. (Dkt. No. 24 Defendant's Memorandum of Law in support of motion for summary judgment ("Def's Mem.") at 7). Earl reported that he no longer felt comfortable working in the same area as Heinrich. When his supervisor suggested a meeting between Plaintiff and Earl, Heinrich, according to Defendant, responded threateningly, stating he "would be glad to meet with [Earl] off Xerox premises;" however, Plaintiff contends that he had simply agreed to meet with Longhenry and Earl "after work." (Dkt. No. 27 Pl's Facts at 12).

On August 28, 2008, another co-worker, David Young ("Young"), complained to Longhenry that the night before Plaintiff had accused Earl and him of "snitching" and threatened him by smirking and stating, "Don't worry, I won't threaten you."

Longhenry reported the two complaints to Xerox Industrial Relations Manager Braithwaite ("Braithwaite") and Xerox Corporate Security employee Darrell Franklin ("Franklin"), who conducted an investigation into the veracity of the complaints. Id. at 12-14.

Four of Plaintiff's co-workers interviewed during the investigation, including Earl and Young, complained and signed statements to the effect that Plaintiff had threatened and intimidated them. Earl confirmed what he had told Longhenry,

adding that Plaintiff had taunted him, "you would like to punch me, wouldn't you?" Young told Braithwaite and Franklin about the incident he reported on August 28, 2008 and added that Heinrich had told him before that he was a black belt and member of a motorcycle gang and had also thrown boxes around their work area. Another co-worker, Laurie Snyder ("Snyder") reported that she was afraid to work alone with Plaintiff and feared retaliation for participating in the investigation. She reported that Plaintiff called her "slow" and a "retard" and would throw objects in the workplace and intentionally throw co-workers' belongings in the trash.

Another co-worker, Rex Pentycofe ("Pentycofe") reported that he had overheard Plaintiff threaten Earl. He also reported that Heinrich was a constant agitator and had told Pentycofe that he was the member of a biker gang and that he and his "boys" would "take care" of anyone who had an issue with him.

On September 17, 2008, Braithwaite and Franklin interviewed Plaintiff as part of the investigation, and he denied threatening or intimidating any of his co-workers. Braithwaite and Franklin decided he was not credible due to the number of co-workers who complained about him, the consistency of the information these co-workers provided, and Plaintiff's extensive disciplinary record. As such, Braithwaite and WFBC Plant Manager David Maxfield ("Maxfield") determined that Heinrich's conduct violated Xerox's Non-Harassment Policy and Monroe County Rule of Conduct No. 15 and

decided that their appropriate response was to file an "E" Labor Report, the level reserved for the most severe violations, and terminate Plaintiff's employment. He was fired on September 28, 2008.

Six months later, in April, 2009, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). After conducting an investigation into Plaintiff's claims, the EEOC dismissed Plaintiff's charge for lack of probable cause to conclude that discrimination occurred. Thereafter, Heinrich commenced this action on April 30, 2010.

On June 22, 2011, this Court denied an earlier motion for summary judgment by Defendant, in order to provide Plaintiff "the opportunity through discovery to verify the ages of the employees identified by Xerox [and] determine whether [] the identified employees are the only employees similarly situated to the plaintiff." Heinrich v. Xerox Corp., 2011 U.S. Dist. LEXIS 66433 at *9 (W.D.N.Y. June 22, 2011). Plaintiff having had an opportunity to conduct discovery, Defendant again moves for summary judgment dismissing Heinrich's claims.

## DISCUSSION
### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A plaintiff cannot rely upon conclusory allegations, but rather must offer probative evidence that creates a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2nd Cir. 1997).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

**II. Plaintiff's Age Discrimination Claims**

**A. Legal Standards for Age Discrimination Claims**

To establish a prima facie case of discrimination under the ADEA, a plaintiff must demonstrate that; (1) he is a member of a protected group; (2) he was qualified for the position he held; and (3) he was discharged under circumstances giving rise to an inference of age discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Promisel v. First American Artificial Flowers, 943 F.2d 251, 259 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992).

In opposing a summary judgment motion in an employment discrimination context, Plaintiff has the burden to "produce a minimal amount of evidence to demonstrate that he has a triable discrimination claim." Jimoh v. Ernst & Young, 908 F. Supp. 220, 223 (S.D.N.Y. 1995)(citing Goenaga v. March of Dimes Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995)); see also Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. N.Y. 1994) ("The burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis")(internal citations omitted).

Once a Plaintiff has established a prima facie case of discrimination, the burden shifts to a defendant to articulate a legitimate, nondiscriminatory rationale for its actions. The burden then shifts to the plaintiff to establish that the employer's stated rationale is merely a pretextual coverup for a discriminatory decision. McDonnell-Douglas, 411 U.S. at 805.

**1. Plaintiff has failed to state a prima facie case of Age Discrimination**

Heinrich has failed to establish that his employment was terminated under circumstances giving rise to an inference of age discrimination. It is undisputed that Plaintiff's employment was terminated after Xerox Industrial Relations Manager Braithwaite and WFBC Plant Manager Maxfield determined that Heinrich's threatening and intimidating conduct violated Xerox's Non-Harassment Policy and Monroe County Rule of Conduct No. 15, which prohibits employees

from harassing, intimidating, creating an undue disturbance, or using abusive language, and determined that the appropriate disciplinary action was an "E" Labor Report and termination of employment. Despite Plaintiff's arguments to the contrary, there is no evidence in the record to suggest that Plaintiff's age played a role in the determination to fire him. For example, Heinrich suggests that an inference of discrimination is raised by the fact that "significantly younger" employees, Longhenry, Young, Dan Williams ("Williams") and Pete DeMarree ("DeMarree") were similarly situated to him and not terminated as he was, as the result of Xerox's age discriminatory practices. (Dkt. No. 27 Heinrich Declaration at ¶ 18-22; Vol. I, Ex. A at 14, Lines 9-10; 97, Lines 9-19).

However, Plaintiff has failed to provide a minimal amount of evidence supporting this inference. It is undisputed that Plaintiff was 40 years-old at the time of his termination. (Dkt. No. 27 Pl's Facts at ¶ 27). However, as this Court stated when assessing Defendant's earlier motion for summary judgment, "to establish an inference of discrimination [] a plaintiff must do more than prove that he is over the age of forty...," but rather he must also "establish that he was treated less favorably than significantly younger employees." Heinrich, 2011 U.S. Dist. at *7 (internal citations omitted). This Court also clarified that "courts have held that age differences of less than three years are

'insignificant' for purposes of determining whether or not one employee is significantly younger or older than another employee." Id. at *8 (internal citations omitted). However, Plaintiff does not dispute the fact that he was one of the youngest employees in his work group, and the only employees who were younger than he were 39 years-old. (Dkt. No. 27 Pl's Facts at ¶ 31). Accordingly, whether Heinrich was disciplined differently by the defendant is immaterial for claims arising under the ADEA.

Plaintiff also alleges that Manager Longhenry and Supervisor Miller, ages 38 and 66, respectively, made comments that give rise to an inference of age discrimination. (Dkt. No. 27 Pl's Facts at ¶ 10). Longhenry and Miller allegedly suggested that Plaintiff "needed glasses" because "when you get older, sometimes...you need glasses" and also that he "get better boots... so [he] wouldn't be limping around." There was also an alleged comment about Plaintiff's exercise and how he was "going to start hurting [himself by weight-lifting] instead of helping [himself.]" None of these comments were directly age-related, derogatory, nor were they the basis for Heinrich's termination.

It is undisputed that Longhenry and Miller did not participate in the decision to terminate Heinrich, despite Plaintiff's arguments to the contrary. See Dkt. No. 27 at ¶ 25 (Plaintiff fails to address whether Longhenry and Miller participated in the decision to terminate Heinrich). Therefore, the allegedly

derogatory comments were made by individuals who did not participate in the decision to terminate Plaintiff and accordingly, these comments are insufficient as a matter of law to create an inference of discrimination. See Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004), citing Malarkey v. Texaco, Inc., 983 F.2d 1204, 1210 (2d Cir. 1993) (holding that statements or stray remarks made by non-decisionmakers were properly received when "they showed the pervasive corporate hostility towards [plaintiff] and supported her claim that she did not receive a promotion due to her employer's retaliatory animus"). Because the comments here do not demonstrate pervasive corporate hostility toward Plaintiff nor age animus that factored into his termination, they are insufficient to create an inference of discrimination.

Plaintiff further argues that an inference of age discrimination is raised by the fact that Earl and Young falsely accused him of violating Xerox's personal conduct policy. However, there is no evidence in the record to suggest that the persons responsible for investigating the incident or terminating the plaintiff's employment exhibited or possessed a bias against the plaintiff for his age. The evidence reveals that Xerox's Industrial Relations Manager Braithwaite and Corporate Security employee Franklin, conducted an investigation of the two reported incidents of Plaintiff's threatening behavior by interviewing possible eyewitnesses and the persons involved. They decided he

-11-

was not credible due to the number of co-workers who complained about him, the consistency of the information these co-workers provided, and Plaintiff's extensive disciplinary record. Braithwaite and Maxfield then determined that Heinrich's conduct violated Xerox's Non-Harassment Policy and Monroe County Rule of Conduct No. 15, and decided that their appropriate response was to file an "E" Labor Report and terminate Plaintiff's employment.

There is no evidence to suggest that Braithwaite, Franklin, or Maxfield bore any discriminatory animus, nor is there any evidence from which a trier of fact could conclude that the eyewitnesses who stated that Heinrich had participated in threatening conduct and intimidation were motivated by a discriminatory purpose. Accordingly, I find no basis for Plaintiff's claims that he was discriminated against on the basis of his age.

2. **Defendant has set forth a legitimate non-discriminatory reason for terminating Plaintiff's employment**

Even if the plaintiff were able to state a prima facie case of age discrimination, the defendant has stated a legitimate, non-discriminatory reason for terminating the plaintiff's employment. Specifically, Xerox contends that Heinrich was fired for threatening and intimidating several of his co-workers in violation of Defendant's personal conduct policy. As such, Defendant's explanation constitutes a legitimate, non-discriminatory reason for terminating plaintiff's employment.

### 3. **Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory reason for terminating the plaintiff's position**

Heinrich has failed to present any evidence from which a reasonable trier of fact could conclude that Heinrich was fired as a result of discrimination, as opposed to being terminated for having threatened and intimidated several of his co-workers.

Plaintiff denies this conduct. In his Amended Complaint, Heinrich claims that his termination on or about September 28, 2008 was the first time that he became aware of any accusations against him. (Dkt. No. 5 at 3). Heinrich maintains that he never threatened any of his co-workers with violence while employed with Xerox, despite the fact that he does not dispute his 29-day suspension in 1996 for allegedly threatening a co-worker's person and life. (Dkt. No. 27 Pl's Facts at 16). He alleges that his co-workers Earl and Young were overheard conspiring to falsely accuse him of the conduct that resulted in his termination. Id. at 22.

Despite these arguments, however, the Second Circuit Court of Appeals has stated that "[i]n a discrimination case, [] we are decidedly not interested in the truth of the allegations against plaintiff... [w]e are interested in what 'motivated the employer.'" McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. N.Y. 2006) (internal citations omitted).

Here, the investigation that led to Plaintiff's termination was thorough and well-documented. There is no evidence that anyone

who participated in the investigation or the termination was motivated by anything other than an effort to verify the complaints made against Plaintiff.  Having conducted a thorough investigation and deciding that Plaintiff was not credible, Xerox concluded that Heinrich's conduct violated its Non-Harassment Policy and Monroe County Rule of Conduct No. 15, and decided that their appropriate response was to file an "E" Labor Report and terminate Plaintiff's employment.  Accordingly, Plaintiff failed to establish that the employer's stated rationale is merely a pretextual coverup for a discriminatory decision.

## CONCLUSION

  For the reasons set forth above, I grant Defendant's motion for summary judgment, and dismiss Plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                              S/Michael A. Telesca
                              _____

                              Honorable Michael A. Telesca
                              United States District Judge

DATED: Rochester, New York
       August 5, 2013